THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EMMETT GENTRY, Defendant-Appellant.

First District (5th Division)   No. 1—87—2913

Opinion filed December 1, 1989.—Rehearing denied January 22, 1990.

Randolph N. Stone, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Christine Perille, Special Assistant State's Attorney, and Inge Fryklund and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant, Emmett Gentry, was convicted of possessing a stolen motor vehicle pursuant to section 4—103 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103) and was sentenced to 5½ years' imprisonment. Defendant contends that conviction must be reversed because section 4—103 of the Code is unconstitutional as violative of due process guarantees.

We conclude it is not and affirm the judgment of the circuit court.

OPINION

Section 4—103 of the Code provides, in pertinent part, in subsection (a):

"It is a violation of this chapter for:

(1) A person not entitled to the possession of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted; additionally the General Assembly finds that the acquisition and disposition of vehicles *** are strictly controlled by law and that such acquisition and disposition are reflected by documents of title, uniform invoices *** and bills of sale. It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle *** has knowledge that such vehicle *** is stolen or converted, regardless of whether the date on which such vehicle *** was stolen is recent or remote[.]"

(Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1).)

Subsection (b) further provides:

"A person convicted of a violation of this Section shall be

guilty of a Class 2 felony." Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(b).

Although defendant's opening brief presents arguments which reach to the constitutionality of both subsections above, we need not address the merits of defendant's contentions with respect to subsection (b) because identical challenges have recently been rejected by our supreme court in *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221. In *Bryant*, the supreme court held section 4—103(b) did not violate due process guarantees either because it punished possessors of stolen motor vehicles more severely than organized motor vehicle thieves or because it provided for a more severe punishment than theft. *Bryant*, 128 Ill. 2d at 455-56, 458, 539 N.E.2d at 1224-25, 1226.

■ Defendant first argues, with respect to subsection (a), that the statute violates due process guarantees because it is not reasonably related to the legitimate purpose of preventing vehicle theft or "chop shop" operations, the acknowledged purpose of the section. Specifically, Gentry argues the section punishes every possessor of a stolen motor vehicle who has knowledge the vehicle was stolen without regard to when that knowledge was acquired or how innocently possession was obtained. Defendant directs our attention to *People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676.

In *Wick*, the supreme court held that section 20—1.1 of the Criminal Code of 1961, creating the offense of aggravated arson, violated due process guarantees. Section 20—1.1 provided:

"A person commits aggravated arson when by means of fire or explosive he knowingly damages, partially or totally, any building or structure, including any adjacent building or structure, and *** (3) a fireman or policeman who is present at the scene acting in the line of duty, is injured as a result of the fire or explosion." (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1.)

In assessing whether the statute satisfied due process guarantees, the court observed the relevant test involved "identifying the public interest that the statute [was] intended to protect, examining whether the statute '[bore] a reasonable relationship' to that interest, and determining whether the method used to protect or further that interest [was] 'reasonable.' " *Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678.

The court determined that because the offense did not require an unlawful purpose in setting a fire, the statute as written was excessively broad, including within its reach those who might innocently set fires in which firemen were injured. (*Wick*, 107 Ill. 2d at 66, 481

N.E.2d at 678.) As an example, the court noted that a farmer who innocently set fire to a dilapidated barn to clear the site for a new one would be liable for a Class X penalty under the statute if a fireman standing by was injured. (*Wick*, 107 Ill. 2d at 66, 481 N.E.2d at 678.) Therefore, the court concluded the statute bore no reasonable relationship to its intended purpose: providing a severe penalty for arsonists whose culpable conduct injured firemen or policemen. (*Wick*, 107 Ill. 2d at 66-67, 481 N.E.2d at 678-79.) Moreover, the court observed, because no culpable intent was included in the statute, the statute provided no reasonable means to effectuate its purpose. *Wick*, 107 Ill. 2d at 66-67, 481 N.E.2d at 678-79.

This court has previously recognized, in determining that possession of a stolen motor vehicle was not a lesser included offense of theft, that section 4—103 was intended to "combat the problems created by 'chop shops,' organized crime and full-time car thieves." (*People v. Carlyle* (1987), 159 Ill. App. 3d 964, 968, 513 N.E.2d 61, 63.) We find the statute reasonably related to that purpose in two ways. First, the statute works directly against activities involved in the procurement of stolen motor vehicles and in "chop shop" operations by making it an offense to conceal, sell, dispose, or transfer a stolen or converted motor vehicle. The statute is further related to its intended purpose in a reasonable way by including within its reach any individual who receives or possesses a stolen or converted motor vehicle, knowing it to be stolen, thus eliminating the market necessary to support the activity of car thieves and "chop shop" operators.

Gentry argues the second manner in which section 4—103 operates, eliminating the market supporting the undesired activities, is too indirect a means to effectuate the statute's purpose. Gentry argues the goal of preventing automobile theft and "chop shop" operations can be achieved more directly by prohibiting the sale or purchase of motor vehicles without document of title.

Gentry's argument, even if accepted, provides no basis upon which to conclude section 4—103 violates due process guarantees. The standard by which section 4—103 must be measured to determine whether it complies with due process guarantees is whether it is reasonably designed to effectuate the purposes of the statute. (See *People v. Rollins* (1982), 108 Ill. App. 3d 480, 438 N.E.2d 1322.) Because we have concluded section 4—103 is reasonably designed to remedy the evils of automobile theft and "chop shop" operations, it is immaterial whether it is the most direct means to effectuate those ends.

We also note section 4—103 does not suffer from the same constitutional deficiency regarding lack of culpable intent as did the aggravated arson statute in *Wick*. Unlike the statute in *Wick*, section 4—103, by including within its reach only those possessors of stolen motor vehicles having knowledge of the fact that the vehicle was stolen, contains the requisite aspect of culpable conduct to effectuate the purpose of the statute.

■ Last, Gentry contends section 4—103 is unconstitutional because it purportedly contains conflicting mental states, thus denying citizens fair notice of the conduct prohibited. Specifically, defendant points out that although the statute requires an individual's knowledge that a particular vehicle was stolen, the statute also embodies a constructive knowledge provision. Defendant directs the court's attention to *People v. Monroe* (1987), 118 Ill. 2d 298, 515 N.E.2d 42, arguing that that case, in which the supreme court concluded the Drug Paraphernalia Control Act (Ill. Rev. Stat. 1985, ch. 56½, pars. 2101 through 2107) was unconstitutional, is analogous.

In *People v. Hall* (1989), 187 Ill. App. 3d 1084, 543 N.E.2d 1038, the third division of this court analyzed the mental state requirements under section 4—103 within the context of the supreme court's decision in *Monroe*. The third division concluded that, unlike the statute in *Monroe*, the constructive knowledge provision contained in section 4—103 does not present a mental state in conflict with the knowledge requirement of the statute. Instead, the constructive knowledge provision of the statute merely permits the requisite knowledge to be inferred from an individual's exclusive and unexplained possession over a stolen or converted vehicle. We agree with that analysis and find no basis to conclude that the inference created in the statute presents a conflicting mental state requirement.

Finally, we note that statutorily created permissive inferences, such as the inference contained in section 4—103, do not violate due process guarantees where three considerations are satisfied: (1) there is a rational connection between the facts proved and the ultimate fact presumed; (2) the presumed fact is more likely than not to flow from the proved fact; and (3) the inference is supported by corroborating evidence of guilt. *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151.

Here, the fact to be proved, knowledge that a particular vehicle has been stolen or converted, is rationally related to, and would more often than not follow from, facts showing exclusive unexplained possession of that vehicle. As our legislature observed in the language of

section 4—103, the transfer of motor vehicles is strictly controlled by law and documented.

■ After reviewing the record, we are satisfied that sufficient corroborating evidence existed to support the inference of guilt. The owner of the vehicle, a 1976 light blue Cadillac, testified that he drove his car to church services on December 31, 1986. When he returned to where he had parked the car, it was gone. Witnesses established that, on the same night, defendant drove the Cadillac down an alley and crashed into a post, another car, and a garage. Defendant was caught as he attempted to climb a fence near where the Cadillac was stopped.

For the above reasons we affirm the judgment of the circuit court.

Affirmed.

MURRAY, P.J., and COCCIA, J., concur.