THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JESSIE FERGUSON, Defendant-Appellant.

First District (6th Division)   No. 1—89—0809

Opinion filed September 21, 1990.

Randolph N. Stone, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a bench trial, defendant, Jessie Ferguson, was convicted of possession of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)) and sentenced to three years in the Illinois Department of Corrections. Defendant now appeals, contending: (1) an insufficiency of the evidence to find guilt beyond a reasonable doubt; (2) the facial unconstitutionality of section 4—103(a)(1) as its presumption of knowledge that a vehicle is stolen is arbitrary and irrational; and (3) a violation of due process as the penalty imposed for the lesser-included offense of possession of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(b)) is greater than that which might be imposed for commission of the greater offense of theft.

At trial, the testimony of Chicago police officers Audrey Nowakowski and Joseph Cox established that the following events occurred. About 4 a.m. on September 3, 1988, Officer Nowakowski and her partner, Officer Cox, were sitting in their squad car facing east on Wilson Avenue when Nowakowski and Cox observed a 1981 Buick Regal headed towards them, "veering" over the center line of west-

bound traffic on Wilson. The vehicle nearly struck a pedestrian who was talking to the officers before continuing westbound on Wilson Avenue.

Nowakowski and Cox made a U-turn in their squad car and followed the vehicle. The driver of the vehicle drove through a red light at the intersection of Clark and Wilson and turned left headed south on Clark. The officers then activated their emergency lights and pulled over the vehicle. As they were doing so, Nowakowski testified that they noticed a white piece of elastic tape over the vehicle's trunk-lock area.

The officers approached defendant, who was the driver. Nowakowski requested defendant to produce his driver's license, but he had none. Defendant then exited the vehicle, the officers conducted a pat-down search of him and defendant then sat back down in the vehicle. At this time, Nowakowski noticed that the steering column had been "peeled." Nowakowski testified that there was a piece of cloth on the upper part of the column, which did not cover the area of the column that was "peeled." Cox testified that there had been a black elastic band approximately one-inch wide wrapped around the steering column, but it was not covering the damaged portion of the column. Upon redirect examination of Nowakowski, the State confirmed that she had stated in her case report that when pulling the vehicle over, the officers observed "black tape covering the trunk lock area and peeled column." A subsequent computer check of the vehicle identification number revealed that the vehicle had been reported as stolen. The officers then placed defendant as well as his two passengers under arrest. After advising defendant of his *Miranda* rights, defendant told the officers that he did not know to whom the vehicle belonged. Both Nowakowski and Cox denied that defendant told them that the man who had given him the car was at the Foster Avenue beach.

Subsequent to the arrests, the officers removed the tape from the trunk-lock area and saw that the key lock, but not the mechanical punch lock, had been removed. The officers also checked the vehicle license plate, finding that the number was listed to a different vehicle.

Officer Cox subsequently tried to start the vehicle numerous times with the key that was in the ignition. Cox was finally able to start the vehicle by putting a screwdriver on the "peeled" column lever and pushing it upwards. According to Cox, that was the only way he could start the vehicle because of its damaged condition. Cox then drove the vehicle to the police station, where it was returned that morning to the owner, Ruth Garcia.

The parties then entered a stipulation that Garcia, if called to tes-

tify, would state that she is the owner of the recovered 1981 Buick Regal and that on September 1, 1988, she had reported the vehicle stolen. Furthermore, she would testify that when she last saw her car, the steering column had not been damaged. Also, she had never given anyone permission to drive or possess her car.

A second stipulation was entered that Secretary of State records listed the recovered vehicle as belonging to Garcia and the license plate it displayed as belonging to a 1971 AMC vehicle owned by another individual.

Following the trial court's denial of defendant's motion for a directed verdict, defendant testified. During direct examination, defendant testified that prior to his arrest, he, the two persons arrested with him and a group of other persons he did not know were sitting around drinking beer at Foster Avenue beach. A man that defendant had never seen and had not seen since told defendant that defendant could take the vehicle in order to obtain more beer. The group was comprised of four or five persons who gave defendant $10. According to defendant, the car was parked in a parking space at the beach with its motor running. Defendant also stated that he did not know that the car was stolen, he did not look into the trunk, and the steering column "just had keys in it." During cross-examination, in response to the question of when he had arrived at the beach, defendant stated, "[I]t had to be about, it was there like 3:00, mostly all day until they put us out." Defendant described "when they make everybody leave" as being 4 a.m. In response to the question of who made them leave, defendant said that a police officer told them that the beach was closed. In response to what next happened defendant stated, "so then on the way to go get the beer, I got pulled over." Also according to defendant, when told that the beach was closing, he and others "still had time."

In response to further questioning, defendant confirmed that he had arrived at the beach at 1 a.m. He also testified that the subject vehicle was at the beach when he arrived; that it was driven as were other cars to get beer; that "the car was already running when we made it there, *** it was running, people running back to the store in the car"; and that the unknown man had told him that he did not need the keys because the car was "cranked and running," and the car had keys in it.

Defendant further testified that he did not notice that the trunk had tape on it, or that the steering column was damaged. Defendant reiterated that he did not know the group of persons at the beach with whom he had been drinking, but that he had met the two per-

sons he had been arrested with because they had all taken the bus to the beach.

During redirect examination, defense counsel attempted to clarify whether defendant, by saying that the car was "running," meant that people were either using or driving the car. Defendant responded negatively and said that the car was just "running" and "would be hard to get it jumped."

Following closing arguments, the trial court stated that defendant was found guilty of burglary and trespass. Defense counsel then asked whether defendant was guilty of possession of a stolen motor vehicle, and the trial court answered affirmatively.

On March 8, 1989, defendant's motion for a new trial was denied. The trial court then sentenced defendant to three years' imprisonment. The order of sentence and commitment states that defendant was sentenced for the offense of possession of a stolen motor vehicle.

Sections 4—103(a)(1) and (b) of the Illinois Vehicle Code provide:

"(1) A person not entitled to the possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted; additionally the General Assembly finds that the acquisition and disposition of vehicles and their essential parts are strictly controlled by law and that such acquisition and disposition are reflected by documents of title, uniform invoices, rental contracts, leasing agreements and bills of sale. It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle *** has knowledge that such vehicle or essential part is stolen or converted, regardless of whether the date on which such vehicle or essential part was stolen is recent or remote.
* * *

(b) Sentence. A person convicted of a violation of this Section shall be guilty of a Class 2 felony." Ill. Rev. Stat. 1987, ch. 95½, pars. 4—103(a)(1), (b).

■ Defendant first argues that the evidence was insufficient to prove him guilty of possession of a stolen motor vehicle and burglary beyond a reasonable doubt. As a threshold matter, we note that while the trial court made a finding that defendant was guilty of burglary, judgment was entered and defendant was sentenced only on the possession of a stolen motor vehicle charge. A conviction means a "judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense." (Ill. Rev. Stat. 1987, ch. 38, par. 2—5.) Since no judgment was entered here as to the charge

of burglary, we need not consider this issue further. *People v. Caballero* (1984), 102 Ill. 2d 23, 51, 464 N.E.2d 223.

■ We now turn to the sufficiency of the evidence as it pertains to defendant's conviction of possession of a stolen motor vehicle. A person commits the crime of possession of a stolen motor vehicle when that person, who is not entitled to possession of a vehicle, receives or possesses that vehicle knowing it to have been stolen or converted. Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1); *People v. Tucker* (1989), 186 Ill. App. 3d 683, 542 N.E.2d 804.

The element of knowledge may be established by proof of circumstances that would cause a reasonable man to believe that the property had been stolen. Direct proof of this element is not necessary, and where possession has been shown, an inference of defendant's knowledge can be drawn from the surrounding facts and circumstances. (*People v. Malone* (1989), 188 Ill. App. 3d 1094, 1096-97, 545 N.E.2d 168; *People v. Hall* (1989), 187 Ill. App. 3d 1084, 1087, 543 N.E.2d 1038; *People v. Tucker* (1989), 186 Ill. App. 3d 683, 694, 542 N.E.2d 804; see also *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 477, 488 N.E.2d 1374.) The possession statute provides that the requisite knowledge of the stolen nature of the vehicle may be inferred from a person's exclusive and unexplained possession of it. The inference of knowledge arising from exclusive possession of recently stolen property may be rebutted by defendant's explanation; however, defendant must offer a reasonable story or be judged by its improbabilities. (See *Mijoskov*, 140 Ill. App. 3d at 477.) The trier of fact is not required to accept defendant's version of the facts, but may consider its probability or improbability in light of the surrounding circumstances. *Mijoskov*, 140 Ill. App. 3d at 477.

The trier of fact determines the credibility of witnesses and the weight to be given their testimony. (*People v. Locascio* (1985), 106 Ill. 2d 529, 537, 478 N.E.2d 1358.) A reviewing court does not reweigh the facts and will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to the guilt of the accused. *People v. Shum* (1987), 117 Ill. 2d 317, 356, 512 N.E.2d 1183.

■ In the present case, the evidence clearly demonstrated that defendant exercised exclusive possession of a stolen motor vehicle. Additionally, defendant stated in response to Officer Nowakowski's questioning that he did not know to whom the vehicle belonged. Nowakowski and Cox both testified that defendant did not tell them that a man who had allegedly given him the vehicle was at the Foster Avenue beach. Additionally, the vehicle's trunk-lock area was visibly taped

and, most importantly, the steering column was visibly "peeled." Defendant's explanation that he obtained an already operating vehicle from a man he had never seen before; that he did not see that the steering column was "peeled" as he was driving while police officers who were not in the car noticed that fact; and that he was undertaking a lengthy, late night errand to obtain beer for a group of strangers who had given him $10 strains belief. We therefore believe that sufficient evidence was presented to raise an inference that defendant knew that the vehicle he was driving was stolen. We also believe that defendant has not successfully rebutted that inference.

Defendant's second argument is that section 4—103(a)(1) is facially unconstitutional as it allows an irrational evidentiary inference of knowledge which undercuts innocent persons who gain possession informally, *i.e.*, borrowing a vehicle from a friend, family member or neighbor.

██ ▌ Statutorily created permissive inferences, such as the inference contained in section 4—103, do not violate due process guarantees where three considerations are satisfied: (1) there is a rational connection between the facts proven and the ultimate fact presumed; (2) the presumed fact is more likely than not to flow from the proven fact; and (3) the inference is supported by corroborating evidence of guilt. (*People v. Gentry* (1989), 192 Ill. App. 3d 774, 778, 549 N.E.2d 609; see *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151; *County Court v. Allen* (1979), 442 U.S. 140, 165, 60 L. Ed. 2d 777, 797, 99 S. Ct. 2213, 2228; *People v. Hester* (1989), 131 Ill. 2d 91, 100, 544 N.E.2d 797.) If there is no corroborating evidence, the leap from the proven fact to the presumed element must still be proved beyond a reasonable doubt. *Hester*, 131 Ill. 2d at 100; *Housby*, 84 Ill. 2d at 421, citing *Allen*, 442 U.S. at 167, 60 L. Ed. 2d at 798, 99 S. Ct. at 2229-30.

A permissive inference or presumption is one where the fact finder is free to accept or reject the suggested presumption. (*Allen*, 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224; *Hester*, 131 Ill. 2d at 99.) "It places no burden on the defendant and 'affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.'" *Hester*, 131 Ill. 2d at 99-100, quoting *Allen*, 442 U.S. at 157, 60 L. Ed. 2d at 792, 99 S. Ct. at 2224-25.

Basic to defendant's argument in the instant case is a misapprehension of the effect of the section 4—103(a)(1) permissive inference. Contrary to defendant's assertions, the allowance of this inference is

not tantamount to the imposition of criminal liability. To that extent, any application of the due process test as enunciated in *People v. Wick* (1985), 107 Ill. 2d 62, 65-66, 481 N.E.2d 676, and applied in *Gentry* (192 Ill. App. 3d at 776-77), to consider whether a statute bears a reasonable relationship to its intended purpose is beside the point. The discussion under consideration in *Wick* and *Gentry* concerned the statute's imposition of criminal liability. The issue here concerns rather an evidentiary assist, a permissive inference, which the trier of fact is free to utilize only where corroborating evidence also exists. The elements of the offense must still be proven beyond a reasonable doubt, and a defendant is not deemed guilty because the inference has been raised. This evidentiary device may not undermine the fact finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. *Allen*, 442 U.S. at 156, 60 L. Ed. 2d at 791, 99 S. Ct. at 2224.

In *Gentry* (192 Ill. App. 3d at 778), this court held that the section 4—103 permissive inference was rationally related to and would more often than not follow from facts showing the "exclusive unexplained possession of a vehicle." Thus, clearly, as the statute is presently construed, a person who gains possession by innocently borrowing a stolen vehicle from a friend or family member would not suffer the application of this inference, unless other unexplained, improbable facts and circumstances also existed. We find, therefore, that section 4—103(a)(1) passes constitutional muster.

■ Defendant's third contention is that section 4—103(b) is unconstitutional and violative of due process inasmuch as it determines possession of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)) to be a Class 2 felony, punishable by three to seven years' imprisonment, while the greater offense of theft (Ill. Rev. Stat. 1987, ch. 38, par. 16—1) is a Class 3 felony (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(e)(3)), punishable by two to five years' imprisonment. Defendant's argument, however, is premised upon the notion that possession of a stolen motor vehicle remains a lesser-included offense of theft following amendment to the Illinois Vehicle Code, effective January 1, 1985.

The Illinois Supreme Court has recently made clear that such is not the case. In *People v. Bryant* (1989), 128 Ill. 2d 448, 457, 539 N.E.2d 1221, the court unequivocally stated:

> "Under previous statutory schemes, possession of a stolen motor vehicle may have been considered a lesser included offense of theft. [Citations.] However, any previous lesser included offense rule is not applicable to the current statutory

scheme for possession of a stolen motor vehicle. The steady increase in the penalty provision for possession of a stolen motor vehicle is indicative of the legislature's intent to make possession of a stolen motor vehicle is a separate, more serious offense than theft, rather than a lesser included offense of theft."

The court reasoned that the legislature was empowered to define criminal conduct and determine the nature and extent of punishment thereof. (See *People v. Steppan* (1985), 105 Ill. 2d 310, 319, 473 N.E.2d 1300.) Thus, the legislature might reasonably alter any previous statutory scheme to allow an increase of penalties, particularly to remedy the increasing frequency of an offense.

■■ Defendant contends, however, that by altering the statutory scheme, thusly, the legislature, in effect, has deprived him of the option of conviction of a lesser-included offense, which thereby enhances the risk of unwarranted convictions and results in deprivations of due process. However, the cases cited by defendant for support (*Beck v. Alabama* (1980), 447 U.S. 625, 637, 65 L. Ed. 2d 392, 402-03, 100 S. Ct. 2382, 2389; *Keeble v. United States* (1973), 412 U.S. 205, 212-14, 36 L. Ed. 2d 844, 850-51, 93 S. Ct. 1993, 1997-99) involved preclusions of lesser-included offense jury instructions. Significantly, neither *Beck* nor *Keeble* found a violation of due process by the failure to instruct as to a lesser-included offense. *A fortiorari*, defendant here would seem to have no cognizable due process interest in the statutory scheme as it existed prior to amendment. We therefore find *Bryant* dispositive, and no further comment is necessary.

Accordingly, we affirm the judgment of the circuit court. As part of our judgment, we grant the State's request and assess defendant $50 as costs for this appeal.

Affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.