THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES E. NIVENS, Defendant-Appellant.

Second District    No. 2—89—0891

Opinion filed November 19, 1992.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel and Susan E. Alesia, both of State Appellate Defender's Office, of Springfield, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and David A. Fernandes, of Champaign (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

After a trial *in absentia,* a jury acquitted defendant, Charles E. Nivens, of one count of theft (Ill. Rev. Stat. 1987, ch. 38, par. 16—1(a)(1)) and convicted him of one count each of possession of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)) and sale of a stolen motor vehicle (Ill. Rev. Stat. 1987, ch. 95½, par. 4—103(a)(1)). Holding that the conviction of possession merged into that for sale, the court sentenced defendant to one term of 30 months' probation and 6 months' incarceration with credit for time served. The court also ordered the defendant to pay $5,000 restitution.

On appeal, the defendant argues that (1) the State did not prove beyond a reasonable doubt that he was the same Charles Nivens who possessed and sold the stolen automobile; (2) the State did not prove beyond a reasonable doubt that, at the time he possessed or sold the vehicle, he knew the vehicle was stolen or converted; and (3) the trial court should have granted his post-trial motion for a new trial because his absence from trial was not willful (see Ill. Rev. Stat. 1987, ch. 38, par. 115—4.1). We affirm.

On May 15, 1989, with defendant and his lawyer present, the court set defendant's trial for July 18, 1989. When the defendant did not appear that day, the court continued the trial to July 19, 1989, and allowed defendant's attorney to call defendant. When his attorney was unable to contact him, defendant was tried *in absentia* on July 19 and 20, 1989.

Michael Fitzgerald testified that, on the morning of August 4, 1987, he parked his 1985 Chevrolet Suburban van in the Medinah, Illinois, Metra station parking lot. When he returned that evening, the van was gone. Fitzgerald had given nobody permission to take the

van. Fitzgerald and his wife purchased the van in 1985 for $16,500. The vehicle was in excellent condition as of August 4, 1987.

Fitzgerald next saw the van on December 22, 1988, when officers from the Illinois Secretary of State's police brought it to his house. The van's distinctive features convinced Fitzgerald that it was the one stolen from him on August 4, 1987. However, the vehicle identification number (VIN) affixed to the dashboard had been changed. The car had been modified in other respects since Fitzgerald last saw it.

Fitzgerald identified People's exhibit No. 2-C as the certificate of title he and his wife received after they paid off the loan on the van. The certificate and People's exhibit No. 2-B, the bill of sale, both bore the Fitzgeralds' signatures.

Charles Victor testified that, in the summer of 1987, he owned a 1984 Chevrolet Suburban van. An accident had damaged the van so badly that the vehicle could not be driven or repaired. Therefore, Victor advertised the van for sale. Late in July or early in August 1987, after receiving numerous responses, Victor sold the van for $2,000. The buyer came to Victor's place of business, made an offer which Victor promptly accepted, and towed the van away.

At trial, Victor did not remember who bought his van. Defendant's attorney showed him a photograph of defendant. Later, the photograph was admitted into evidence as defendant's exhibit No. 1 and People's exhibit No. 8. Victor admitted that he did not recognize the man in the photograph. On the day that he sold the van, Victor's place of business was crowded with potential buyers, and the actual sale took very little time. After examining a photograph of the Fitzgeralds' 1985 Suburban, Victor testified that he had never seen the Fitzgeralds' van.

When Victor sold his van, he gave the buyer the van's certificate of title. At trial, an accurate photocopy of the certificate was admitted into evidence as People's exhibit No. 1-E. The front of the certificate identifies the van as a 1984 Chevrolet Suburban and lists the van's VIN. It also identifies Victor as the owner. On the back of the certificate, in the section headed "Assignment of Title," appears Victor's signature. The document lists the sale date as August 31, 1987. Above Victor's signature, after the standard words "The undersigned hereby certifies that the vehicle described in this title has been transferred to" appear the hand-printed words "William and Barbara S. Barkstrom." In similar printing, the Barkstroms' address is given as "8935 Palisades, Hinsdale." Victor testified that, when he sold his van, he signed his name on the back of the certificate; the signature on the exhibit was his. However, he left the space above his signature

blank. The writing identifying the Barkstroms as buyers was not there when Victor tendered title to the buyer of his 1984 van.

William and Barbara Sue Barkstrom both testified that they were acquainted with Charles Nivens, as, some years before 1987, Nivens had lived in their neighborhood. The Barkstroms purchased their home from Nivens' grandmother. The Barkstroms both identified the man in People's exhibit No. 8 as Charles Nivens.

The Barkstroms testified that, on August 30, 1987, Nivens drove to their home in Hinsdale. At trial, the Barkstroms were shown a photograph of the Fitzgerald van. They identified the van in the photograph as the one that Nivens drove. Nivens told the Barkstroms that the Suburban belonged to a friend who was having financial difficulties and wanted to sell the van. After William Barkstrom said he would like to buy the van, Nivens said that his friend would sell it for $7,000.

On September 8, 1987, Nivens returned in the Fitzgeralds' van to the Barkstroms' residence. Nobody rode with him. The Barkstroms gave him $7,000 cash. Nivens gave them the van, the keys, and a certificate of title. Since then, the Barkstroms had not seen or heard from Nivens.

William Barkstrom identified People's exhibit No. 1-C as the title certificate that he received when he took possession of the van that Charles Nivens sold him. The certificate states that, on August 1, 1986, Wheels, Inc., of Skokie, Illinois, transferred the title to the 1984 Chevrolet Suburban to Charles Victor of Northbrook. At trial, Barkstrom recollected that the van's title was in Victor's name at the time the Barkstroms purchased the van. Also, the VIN on the vehicle's dashboard matched that on the title certificate. Both Barkstroms identified People's exhibit No. 1-F as a form that Barbara Barkstrom filled out and signed when she withdrew $7,000 from a currency exchange. The form states that on August 31, 1987, the Barkstroms bought a 1984 Chevrolet Suburban from Charles Victor.

The State's final witness was Officer Richard Romero of the Illinois Secretary of State's police. Romero was the leader of a 1988 investigation regarding the 1984 Chevrolet Suburban that Victor had sold. The investigation stemmed from a State investigation of a used car dealership.

Romero explained that the police use VINs to track changes in the possession of vehicles. The VIN is the number the dealer assigns to identify a specific vehicle. The VIN is on a tag attached to the dashboard of the vehicle. It is also possible to derive the VIN from sets of numbers that are printed on locations elsewhere in or upon the

vehicle. For each vehicle, the VIN appears on all change of title forms. The Secretary of State's office keeps records of all changes in a vehicle's title.

Romero recounted that, in December 1988, the Barkstroms agreed to let him and a colleague inspect the van they had bought from Charles Nivens. Romero discovered that the VIN on the dashboard did not match the derived VIN. The police ran checks on the VINs, ordered copies of certified title changes for the Barkstroms' van and the Fitzgeralds' van, and confiscated the Barkstroms' van.

The police discovered that the true VIN (the one recorded by the Secretary of State) for the Barkstroms' van matched the derivative VIN and the VIN on the Fitzgeralds' certificate of title. The VIN on the dashboard of the van had been taken off of a separate vehicle—one that came out of the dealership that the police had been investigating. Romero eventually learned that Charles Victor had previously owned this vehicle. Romero testified that, according to State records, Victor had "signed the vehicle off" and that title was transferred to the Barkstroms.

The jury found defendant guilty of the possession and the sale of the stolen Fitzgerald van.

Defendant moved for a new trial. His written motion alleged that his absence from trial was not willful. The court heard the motion, with defendant as the sole witness. Defendant stated on direct examination that he posted bond in January 1989 and had not missed a court date until trial. At the time he was arrested, he was living in his mother's house. Shortly before the trial itself, his mother sold the house and moved out of Illinois. Since late June 1989, defendant, who was on parole on unrelated charges, had been living with a friend. Within a week of his move, he notified his parole officer of his new address.

On direct examination, defendant stated that the first time he learned that he had been tried and convicted *in absentia* was when he went to the courthouse on July 24, 1989, and Mr. Sotomayor of the public defender's office told him that the trial had already taken place. On cross-examination, defendant admitted that this account was untruthful. He acknowledged that on July 21 or 22, 1989, Mrs. Barkstrom told him that he had missed his trial. Defendant also stated that he had not missed his May 15, 1989, court date.

The court denied the motion for a new trial. Judge Telander noted that the defendant and his attorney were present in court on May 15, 1989, when Judge Robert Cox, then assigned to the case, set the trial for July 18, 1989. The transcript of the May 15, 1989, proceeding con-

firms this observation. Judge Telander concluded that defendant had a responsibility to get his court dates straight and to inform his attorney of his whereabouts. The judge therefore found no reason to vacate the judgment. After defendant was sentenced, he timely appealed.

■ Defendant argues first that the evidence was insufficient to show that he was the Charles Nivens who possessed the Fitzgerald van and sold the van to the Barkstroms. Acknowledging that somebody with his name performed these actions, defendant maintains that mere identity of names is legally insufficient to establish identity of person. Defendant cites several appellate court decisions enunciating this principle. See *People v. Newbern* (1989), 183 Ill. App. 3d 995; *People v. Johnston* (1987), 160 Ill. App. 3d 536; *People v. Broyld* (1986), 146 Ill. App. 3d 693.

As the State notes, however, our supreme court has rejected the argument upon which defendant relies. In *People v. Smith* (1992), 148 Ill. 2d 454, the court held that identity of names raises a presumption of identity of persons; if this presumption is unrebutted, identity of person is established beyond a reasonable doubt. (*Smith*, 148 Ill. 2d at 465; see *People v. Davis* (1983), 95 Ill. 2d 1, 31.) As defendant introduced no evidence to rebut this presumption, the State adequately established that he was the Charles Nivens who possessed and sold the stolen Fitzgerald van.

Also, we agree with the State that there was evidence of identity beyond the identity of names. Defendant's attorney conceded (and defendant does not now argue) that the photograph admitted as People's exhibit No. 8 (and used by defendant's attorney in cross-examining Charles Victor) is that of defendant and not a picture of some other person by the same name.

■ Defendant argues second that the evidence did not establish beyond a reasonable doubt that, when he possessed and sold the Fitzgeralds' van, he knew the vehicle was stolen or converted. The State replies that the jury could properly infer defendant's guilty knowledge from his unexplained possession of recently stolen property. We agree.

As it was instructed, the jury could infer the defendant's culpable state of mind from his exclusive and unexplained possession of recently stolen property. (See Illinois Pattern Jury Instructions, Criminal, No. 13.21 (2d ed. 1981); *People v. Ferguson* (1990), 204 Ill. App. 3d 146, 151; *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 477.) Although a defendant may rebut this inference with an explanation, the defendant must offer a reasonable story or be judged by its improbabilities. The trier of fact need not accept the defendant's explanation,

but may evaluate its probability or improbability in light of the surrounding circumstances. *Ferguson*, 204 Ill. App. 3d at 151; *Mijoskov*, 140 Ill. App. 3d at 477.

The jury had ample reason to disbelieve defendant's account to the Barkstroms that he was selling the car for "a friend" and did not know that the car was stolen. As the prosecutor noted in closing argument, it is less than believable that a friend (who was otherwise unidentified) would entrust defendant with a $7,000 sale without so much as appearing at the offer or sale. Moreover, defendant gave the Barkstroms a certificate of title that represented that the van was owned by Charles Victor. Either defendant did not know Charles Victor, in which case his story that he was selling the car for "a friend" was false, or he did know Charles Victor, in which case he realized that the certificate of title was misleading and that Victor never owned the 1985 Suburban that defendant sold to the Barkstroms. Moreover, defendant sold the van for cash and conveniently fell out of touch after the Barkstroms paid him. The jury did not have to believe that defendant was an unknowing victim of circumstances.

■ Defendant argues finally that the trial court erred in finding that defendant's absence from the trial was willful. The defendant's willful absence is a prerequisite to trial *in absentia*. (Ill. Rev. Stat. 1987, ch. 38, par. 115—4.1.) To establish a *prima facie* case of willful absence, the State must prove that the defendant was advised that his failure to appear may result in a trial *in absentia*; was advised of his trial date; and did not appear. (*People v. Smith* (1989), 189 Ill. App. 3d 80, 83.) Without dispute, the State proved these elements.

Because it is the defendant's duty to keep track of his court dates, to appear when required, and to keep the court informed of his whereabouts, absence resulting from confusion or forgetfulness will not warrant a new trial. (*People v. Canal* (1991), 210 Ill. App. 3d 733, 736; *Smith*, 189 Ill. App. 3d at 83-84.) The defendant rebuts the finding of willful absence only by proving that his absence was not his fault *and* was due to circumstances beyond his control. (*Canal*, 210 Ill. App. 3d at 735.) Defendant did not meet this burden. The trial court properly denied his motion.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and DOYLE, JJ., concur.