2023 IL App (1st) 221767-U

No. 1-22-1767

Order filed: June 2, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* S.B., a Minor | ) | |
| | ) | Appeal from the Circuit Court |
| (The People of the State of Illinois, | ) | of Cook County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | No. 22 JD 01103 |
| | ) | |
| v. | ) | The Honorable |
| | ) | Stuart F. Lubin, |
| S.B., | ) | Judge, Presiding. |
| | ) | |
| Respondent-Appellant). | ) | |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's delinquency finding where a rational trier of fact could find minor guilty beyond a reasonable doubt of the offense of possession of a stolen motor vehicle.

¶ 2    Following a bench trial, the circuit court adjudicated S.B. delinquent for, *inter alia*, the

offense of possession of a stolen motor vehicle and committed S.B. to the Illinois Department of

Juvenile Justice for an indeterminate period, the lessor of a maximum term of seven years or S.B.'s 21st birthday. On appeal, S.B. argues the State failed to prove beyond a reasonable doubt that he knew the vehicle at issue was stolen. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On July 29, 2022, the State filed a petition for adjudication of wardship charging respondent, S.B., then 17 years old, for the offenses of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022)) and criminal trespass to vehicle (720 ILCS 5/21-2 (West 2022)).

¶ 5      At the bench trial, John Keuthe testified that, on July 28, 2022, around 3:15 p.m., he drove to Mariano's grocery store located at the intersection of Chicago Avenue and Damen Avenue in his 2018 Mercedes E400. Keuthe was the owner of the Mercedes. Keuthe parked the car on Chicago Avenue and walked toward the grocery store entrance. Keuthe then saw two black males exit a vehicle that was double parked on Chicago Avenue. Keuthe described the two males as "[p]robably [in their] late teens, early 20's perhaps" who "had masks on" and "I believe hoodie or something over their head." One of the males pointed a handgun at Keuthe and demanded his car keys. Keuthe gave the males his car key, and both males got into the Mercedes and left the area. The whole incident lasted about ten seconds.

¶ 6      Keuthe called 911 using a bystander's cellphone, and police arrived at the scene about 10 to 15 minutes later. Keuthe remained on the scene for another 15 to 20 minutes until officers drove him home. At home, Keuthe used his Find My Phone application to track his cell phone, which he left in the Mercedes, and gave the location data to the police. About an hour after the Mercedes was taken, police informed Keuthe that the car was recovered. Keuthe did not know S.B. and did not give S.B. permission to operate or enter the Mercedes on the day of the incident.

¶ 7    Cook County Sheriff Police Investigator Robert Bonakowski testified he was part of the vehicular hijacking task force. Bonakowski explained the vehicular hijacking task force was a multi-jurisdictional unit run by the Chicago Police Department, the state police, and other agencies and has "multiple aircrafts, and we'll monitor vehicles that have already been stolen or carjack[ed] and anything that happens while we're on shift." Bonakowski stated that, on the date of the incident, he was driving in an unmarked police vehicle and wore plain clothes with a police vest. Around 3:30 p.m., Bonakowski responded to Keuthe's 911 call and proceeded to the scene of the incident. While commuting to the scene, Bonakowski entered Keuthe's license plate into a city-wide plate reader system that uses cameras across the city of Chicago to locate plates and alert officers to the location. Bonakowski's partner obtained additional vehicle information from the Mercedes company. After Bonakowski and his partner obtained their information, they went back on patrol and began seeing alerts from the plate reader system. The reader system alerted Bonakowski that the Mercedes' license plate was recognized in the 11th police district and then in the 15th police district. The task force's helicopter unit was tracking the Mercedes as well. Bonakowski learned the helicopter unit located the Mercedes in the 11th police district and the 11th district police unit attempted to stop the Mercedes when it fled. The helicopter continued tracking and dispatching the location of the Mercedes.

¶ 8    Following the helicopter unit's tracking information, Bonakowski drove to Interstate 290 eastbound ramp at Independence Boulevard. He then saw the Mercedes drive pass his vehicle at a high rate of speed on the ramp, and Bonakowski pursued the Mercedes but lost track of it. He continued driving on Interstate 290 and exited on Damen Avenue. He caught up with the Mercedes at Damen Avenue and Washington Boulevard but briefly lost sight of it. Bonakowski saw the

Mercedes again after it collided with another vehicle on the northwest corner of Walnut Street and Damen Avenue resulting in damage to the front passenger side of the Mercedes. Bonakowski saw S.B. exit first from the driver's side door, and then, another individual exited the driver's side door. They both ran from the scene. Bonakowski drove his police vehicle westbound on Walnut Street, northbound through an empty lot, and then westbound through an alleyway. He used the police vehicle to block the path of the alleyway, and then exited his vehicle. S.B. turned and ran in the opposite direction. Bonakowski caught up to S.B. and placed him into custody in the alleyway.

¶ 9    Bonakowski confirmed that the license plate number of the Mercedes from which S.B. exited matched the plate number of Keuthe's car. He testified that he responded to the scene of the incident around 3:30 p.m. and placed S.B. into custody around 4:30 p.m. Bonakowski acknowledged that he did not see the driver of the Mercedes while he saw the car in motion and did not see the collision occur. He was about 50 feet away from the Mercedes when he saw S.B. exit the car, and he had a clear line of sight. Bonakowski also observed that the Mercedes was a two-door vehicle.

¶ 10    The circuit court found S.B. delinquent for the offenses of possession of a stolen motor vehicle and criminal trespass to vehicle. The court found S.B. was the driver of the Mercedes, and thus, possessed the vehicle because Bonakowski "identified this person in front of me, [S.B.], as the person who got out of the car first. He was 50 feet away. He got out of the driver's side. It's a two-door. Somebody else then got out." The court also found S.B. knew the Mercedes was stolen because "[h]is flight shows consciousness of the guilt. If he thought these other people who may have given him the car with permission, he wouldn't have done that." S.B. filed a motion to reconsider, which the court denied.

¶ 11    At sentencing, the circuit court found it was in the best interest to adjudicate S.B. a ward of the court and appointed the Illinois Department of Juvenile Justice as S.B.'s legal custodian. The court stated that this was S.B.'s ninth finding of delinquency and that his background "tells me at this point in your life, you've chosen a life of crime." Noting that S.B. had been given opportunities such as probation and drug abuse programming in the past, the court found committing S.B. to the Department was the least restrictive means available. The court committed S.B. to the Department for an indeterminate period, the lessor of a maximum term of seven years or S.B.'s 21st birthday. This appeal follows.

¶ 12                            II. JURISDICTION

¶ 13    On September 28, 2022, the circuit court found S.B. delinquent for the offense of possession of a stolen motor vehicle. On October 26, 2022, the court adjudicated S.B. a ward of the court and committed S.B. to the Illinois Department of Juvenile Justice. S.B. filed a notice of appeal on November 22, 2022. We have jurisdiction over this appeal pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013), 606 (eff. March 12, 2021), and 660 (eff. Oct. 1, 2001).

¶ 14                            III. ANALYSIS

¶ 15    On appeal, S.B. argues the circuit court's finding of delinquency should be reversed because the State failed to prove beyond a reasonable doubt that S.B. knew the Mercedes had been stolen. Specifically, S.B. claims the State provided no evidence of the time S.B. got possession of the Mercedes, the Mercedes was not in a condition that would indicate to S.B. that it was stolen, and any evidence that he drove the Mercedes was weak. S.B. also contends that there is no evidence of consciousness of guilt where he did not know he was being pursued by a police vehicle, and his

flight can be explained by the collision. The State asserts that it proved beyond a reasonable doubt that S.B. knew the Mercedes was stolen because the Mercedes was in constant motion during the pursuit, the Mercedes was moving at a high rate of speed, the police unit attempted to stop the Mercedes, S.B. was the first person to exit the Mercedes after the collision, and the time between the carjacking incident and S.B.'s apprehension was only an hour.

¶ 16    The State has the burden to prove every element of a charged crime beyond a reasonable doubt. U.S. Const. amends. V, XIV; Ill. Const. 1970, art. I, § 2; *In re Winship*, 397 U.S. 358, 363-64 (1970); *People v. Weinstein*, 35 Ill. 2d 467, 469-70 (1966). To prove defendant guilty of possession of a stolen motor vehicle, the State must prove that defendant was the driver or operator of a vehicle, he was not entitled to possession of that vehicle, and he knew it was stolen or converted. 625 ILCS 5/4103.2(a)(7)(A) (West 2018).

¶ 17    In determining whether the evidence was sufficient to justify a conviction, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). A conviction will not be reversed unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of guilt. *Id.* In reviewing the evidence, it is not the function of the court to retry the case, nor will we substitute our judgment for that of the trier of fact. *Id.* "Rather, in a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of the witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). A reviewing court will not reverse a conviction simply because the evidence is contradictory or because the defendant claims that a witness was not credible. *Id.*

¶ 18    A person commits possession of a stolen motor vehicle when that person, who is not entitled to the possession of the vehicle, receives or possesses that vehicle knowing it to have been stolen or converted. 625 ILCS 5/4-103(a)(1) (West 2022). "Direct proof of knowledge that the property is stolen is not necessary. A defendant's knowledge that the vehicle was stolen can be inferred from the surrounding facts and circumstances which would lead reasonable people to believe that the property was stolen." *People v. Santana*, 161 Ill. App. 3d 833, 838 (1987).

¶ 19    Here, the evidence shows, shortly after Keuthe called 911 to report the Mercedes stolen, Investigator Bonakowski responded and began a search. The joint unit between the Chicago Police Department, Cook County Sheriff's Office, and the helicopter unit also participated in the car search. Within the hour, Bonakowski learned the helicopter unit had located the Mercedes, and the Chicago police unit attempted to stop the car. Following the tracking information obtained from the helicopter unit, Bonakowski drove to Interstate 290 ramp and saw the Mercedes drive pass his police vehicle at a high rate of speed. Although Bonakowski lost track of the Mercedes during his pursuit, the helicopter unit had continued tracking the vehicle and Bonakowski relied on the unit's tracking information to catch up to the Mercedes. When Bonakowski saw the Mercedes again, it had collided with another vehicle and, from 50 feet away and in clear line of sight, Bonakowski saw S.B. exit the driver's side of the Mercedes first and run from the scene. Bonakowski eventually apprehended S.B.  Bonakowski testified that the entire incident, pursuit, and arrest occurred in an hour. Considering these facts in the light most favorable to the State, we believe a rational trier of fact could find S.B. knew the Mercedes was stolen.

¶ 20    S.B. argues the evidence cast reasonable doubt as to his knowledge that the Mercedes was stolen for several reasons. First, S.B. claims there was no evidence that he stole the Mercedes or

when he entered the Mercedes. However, this evidence was not necessary to prove S.B. knew the Mercedes was stolen where a reasonable trier of fact could find other facts established S.B.'s knowledge, such as the attempted stop early in the pursuit, the Mercedes' high rate of speed during the pursuit, and S.B.'s flight after the car collision.

¶ 21    Second, S.B. argues that there was no evidence that, when S.B. entered the car, he knew it was stolen. S.B. cites *In the Interest of Wilder*, 46 Ill. App. 3d 507 (1977), and *People v. Owes*, 5 Ill. App. 3d 936 (1972), for the proposition that "when the State presents no evidence of a forced entry into the car or no evidence that the ignition had been tampered with, the State fails to prove that a person in a stolen car knew the car was stolen." In considering the relevant facts and circumstances in each case, this court found that the State failed to provide sufficient evidence that the defendant knew the vehicle was stolen. In *Wilder*, the court found insufficient evidence of knowledge where "the only evidence linking respondent to the commission of the offense was his physical presence." *Wilder*, 46 Ill. App. 3d at 510. In *Owes*, the court found "there was no reasonable indication the car was stolen or was being driven by a person not lawfully in possession, or that they knew that the car did not belong to one of the two men who invited them to go for beer." *Owes*, 5 Ill. App. 3d at 938. Contrarily, a rational trier of fact could rely on the evidence here in finding beyond a reasonable doubt that the S.B. knew the Mercedes was stolen, including the relatively short time of events, the attempted stop early in the pursuit, the Mercedes' high rate of speed during the pursuit, and S.B.'s flight after the car collision. "Direct proof of this element is not necessary. See *People v. Ferguson*, 204 Ill. App. 3d 146, 151 (1990) (in prosecution for possession of stolen motor vehicle, element of knowledge may be established by proof of

circumstances that would cause reasonable person to believe that property had been stolen); see also *People v. Miller*, 2013 IL App (1st) 110879, ¶ 55.

¶ 22    Third, S.B. contends any evidence that he was the driver of the Mercedes was weak because Bonakowski never saw S.B. driving the Mercedes and S.B.'s only exit after the collision was through the driver's side door. However, the circuit court found the fact that S.B. exited the Mercedes first and then ran from the collision was indicative of his position as the driver and we find this fact is reasonably inferred from the evidence. Although S.B. provides another plausible inference, we give deference to the circuit court's findings when they are reasonable. *Ferguson*, 204 Ill. App. 3d at 151 ("The trier of fact is not required to accept defendant's version of the facts but may consider its probability or improbability in light of the surrounding circumstances.").

¶ 23    Fourth, S.B. asserts the State failed to prove he exhibited consciousness of guilt where (1) there was no evidence S.B. knew Bonakowski's unmarked vehicle was a police vehicle and (2) there was no evidence S.B. was fleeing police during the pursuit. However, this argument ignores other evidence that occurred during the pursuit, including the Chicago Police unit's attempt to stop the car early in the pursuit and the Mercedes' high rate of speed during the pursuit. Citing *People v. Miller*, 2013 IL App (1st) 110879, S.B. further argues the evidence infers S.B. was fleeing from the collision, not the carjacking incident. In finding that the evidence was closely balance under the plain error doctrine, the *Miller* court stated that it would not presume defendant's flight from a stolen vehicle was evidence of consciousness of guilt where the evidence also inferred the defendant fled because he committed a serious moving violation. *Miller*, 2013 IL App (1st) 110879, ¶ 62. However, unlike *Miller*, this case involves a sufficiency of the evidence determination. Our supreme court recognized, "[w]hether the evidence is closely balanced is, of

course, a separate question from whether the evidence is sufficient to sustain a conviction on review against a reasonable doubt challenge." *People v. Piatkowski*, 225 Ill. 2d 551, 566 (2007). Hence, the issue here involves the sufficiency of close evidence, not the closeness of sufficient evidence. See *People v. Sebby*, 2017 IL 119445, ¶ 60. The circuit court found S.B.'s flight was indicative of his knowledge that the Mercedes was stolen. We find this to be a reasonable inference given the evidence of the Chicago Police unit's attempt to stop the car early in the pursuit and the Mercedes' high rate of speed during the pursuit. Hence, we defer to the circuit court's finding.

¶ 24    Fifth, citing *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. Vega*, 2022 IL App (1st) 200633-U, S.B. argues "the fact that S.B.'s behavior—impulsive decision-making, poor driving, and a bad interaction with police—was that of a juvenile, undermines the inference that such behavior indicates a consciousness of guilt that he *knew* the vehicle was *stolen*." While we acknowledge the plethora of case law and scientific reports on a juvenile's behavior and decision-making, *Miller* and its progeny involve juvenile sentencing and, therefore, are inapplicable to our sufficiency of the evidence determination. We find that, when considering the evidence in the light most favorable to the State, a rational trier of fact could find beyond a reasonable doubt that S.B. knew the Mercedes was stolen.

¶ 25                              IV. CONCLUSION

¶ 26    We find that a rational trier of fact could find beyond a reasonable doubt that S.B. had the requisite knowledge for the offense of possession of a stolen motor vehicle, and we affirm the circuit court's finding of delinquency.

¶ 27    Affirmed.