THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SADAR ABDULLAH, Defendant-Appellant.

First District (3rd Division)   No. 1—90—2926

Opinion filed September 25, 1991.

Randolph N. Stone, Public Defender, of Chicago (Robert D. Glick, As-
sistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Barbara A. Bailey, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, defendant, Sadar Abdullah, was convicted of possession of a stolen motor vehicle (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)) and was sentenced to 30 months' probation. On appeal, he contends that the evidence was insufficient to support his conviction and that the trial court committed reversible error when it admonished a defense witness and entered judgment without permitting closing argument by defense counsel.

We affirm.

Officer Christopher Pledger testified that at approximately 2:20 a.m. on May 24, 1990, he stopped the vehicle in question because it matched the description of a van which had been reported to be involved in a hit-and-run accident. At that time, defendant was driving the van and Terrance Steiger, together with two women, were passengers in the van. The officer and defendant exited their respective vehicles and conversed beside the van. In response to the officer's request for his driver's license, defendant produced a faded and illegible traffic ticket. When the officer asked for proof of insurance, defendant reached into the vehicle and found a folder. Defendant searched through the folder but could not find any proof of insurance for the van.

Officer Pledger observed "jumbo wires" hanging from the steering column and plastic broken away from the column. There were no broken windows in the van and no other damage to the exterior of the van. Half of an unused, broken key was also found lodged in the steering column.

The officer then took defendant to the police station and questioned him. Defendant told the officer that he did not know the van was stolen, he had only been in the car for about one hour, and the steering wheel was in damaged condition when he entered the van. The officer further testified that defendant admitted knowing that the steering column was "peeled."

The parties stipulated that Orad Caston would testify that on May 24, 1990, he owned the van in question and that he did not authorize defendant or anyone else to drive or possess it.

At trial the 19-year-old defendant testified that at approximately 7 p.m. on May 24, 1990, he and a friend named Brandon Turner were walking down a street when Steiger, also a friend of defendant for many years, appeared in a van. When questioned by defendant about his possession of the van, Steiger stated that the van belonged to his boss, who owned a construction company. Defendant testified that since he did not know Steiger had a job, he was surprised by Steiger's explanation and that Steiger further said it was his first day at the job for the construction company.

Defendant entered the front of the van, and Turner went in the back seat. With Steiger driving the van, the three men first rode to a nearby Burger King restaurant, then drove Turner home, and went to another person's house where they picked up two women who were riding in the rear of the van at the time of the arrest. Steiger, with his three passengers, then drove to a White Castle restaurant where they all exited the van to go into the restaurant and left the motor running.

When they returned to the van, Steiger complained that he was tired and did not have a driver's license. Defendant thereafter operated the van.

Defendant already knew Steiger did not have a driver's license before Steiger picked him up earlier in the evening. Defendant further testified that when he entered the driver's seat, he did not notice the steering column had been stripped until Steiger told him that the vehicle had been previously burglarized but had not yet been repaired. Defendant stated that no wires were hanging from the steering column and the damage consisted of only a hole in the lower neck of the steering wheel. The hole, according to defendant, was not readily visible to occupants of the car or the police.

At trial Steiger testified that after he picked up defendant and Turner in the van in question, Steiger initially told defendant that the van belonged to his boss but later told him that the van belonged to a high school acquaintance named Mark whose last name Steiger could not recall. A day or two before being stopped by the police, Steiger paid $50 to Mark to borrow the van to do errands for a prom, such as picking up a tuxedo. When he got the van from Mark, Steiger noticed that the steering column was damaged. According to Steiger, Mark told him that the damage occurred during a previous theft attempt and had not yet been repaired. Steiger further testified that Mark showed him how to start the van from the side of the steering column, which was peeled and, in turn, Steiger showed defendant the same method of ignition. Steiger also stated that he told defendant

about borrowing the van from Mark and about Mark's statement that the van had been stolen previously. Steiger maintained that he did not know the van was stolen until the police stopped them.

We first address defendant's contention that he was not proved guilty beyond a reasonable doubt on the grounds that the State failed to establish an element of the crime, *i.e.*, knowledge. We do not agree.

A person commits the offense of possession of a stolen motor vehicle when he receives or possesses that vehicle knowing it to have been stolen or converted and he is not otherwise entitled to its possession. (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1).) The General Assembly has taken great care to develop a statutory remedy to discourage the theft of motor vehicles. Section 4—103(a)(1) of the Illinois Vehicle Code provides:

"§4—103 *** (a) It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle *** to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted; additionally the General Assembly finds that the acquisition and disposition of vehicles and their essential parts are strictly controlled by law and that such acquisition and disposition are reflected by documents of title, *** and bills of sale. It may be inferred, therefore that a person exercising exclusive unexplained possession over a stolen or converted vehicle *** has knowledge that such vehicle *** is stolen or converted ***." (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1).)

The statute, therefore, creates an inference that a person exercising exclusive and unexplained possession of a stolen vehicle has knowledge that that vehicle is stolen.

Knowledge is a question of fact to be resolved by the trier of fact. (*People v. Santana* (1987), 161 Ill. App. 3d 833, 838, 515 N.E.2d 715.) Moreover, the question of a witness' credibility and the weight to be given the evidence are matters within the province of the trier of fact. (*People v. Ambrose* (1988), 171 Ill. App. 3d 87, 91, 525 N.E.2d 536.) To sustain a conviction based on circumstantial evidence, the trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt. *Santana*, 161 Ill. App. 3d at 837-38, 515 N.E.2d 715.

Direct proof of the element of knowledge is not necessary but may be established by proof of circumstances that would induce a belief in a reasonable mind that the property was stolen. *People v.*

*Wehrwein* (1989), 190 Ill. App. 3d 35, 41, 545 N.E.2d 1005; *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 477, 488 N.E.2d 1374.

Where possession has been shown, an inference of defendant's knowledge can be drawn from the surrounding facts and circumstances. (*People v. Ferguson* (1990), 204 Ill. App. 3d 146, 151, 561 N.E.2d 1118.) A defendant may attempt to rebut the inference of guilty knowledge which arises from the possession of a stolen vehicle, but the defendant must offer a reasonable story or be judged by its improbabilities. (*Mijoskov*, 140 Ill. App. 3d at 477.) However, the trier of fact is not required to accept defendant's version of the facts. *Ferguson*, 204 Ill. App. 3d at 151; *Mijoskov*, 140 Ill. App. 3d 473, 488 N.E.2d 1374.

The condition of the vehicle is one of the most significant factors which courts consider in determining whether or not the defendant had knowledge of the vehicle's theft. The element of knowledge has been properly inferred where the steering column was peeled and the key in the ignition would not start the vehicle. (*Ferguson*, 204 Ill. App. 3d at 152.) In considering several factors regarding the question of knowledge, the *Ferguson* court stated that "most importantly, the steering column was visibly 'peeled' " and yet the defendant claimed that he did not see the peeled column as he was driving. (*Ferguson*, 204 Ill. App. 3d at 152.) The *Ferguson* court also noted that the vehicle was running when defendant obtained possession and that the key in the ignition would not start the car. *Ferguson*, 204 Ill. App. 3d at 152.

■ Similarly, in the instant case the evidence presented at trial revealed that the steering column had been damaged and the broken key lodged in the ignition did not operate the van. Officer Pledger testified that wires were hanging from the steering column and plastic was broken away from the column. Steiger also testified that he noticed the steering column was damaged and that Mark showed him how to start the van from the side of the steering column which was peeled. Thereafter, Steiger showed defendant the method of ignition without use of the key. Although defendant stated that he did not notice the steering column had been stripped, he testified that Steiger specifically told him that the damage had been done at the time of a prior theft attempt. Defendant also acknowledged that there was a hole in the lower neck of the steering wheel. In addition, like the defendant in *Ferguson*, defendant testified that the van was already in operating condition when he first encountered Steiger on the street and that the van was left running when they went into the White Castle restaurant.

At trial defendant testified that he was surprised to hear that Steiger had a job and knew that Steiger did not have a driver's license. Yet defendant submits that he accepted Steiger's explanation that his new boss lent the van to Steiger, who did not have a driver's license and who had just completed his first day on the job. In addition, inconsistencies exist between the testimony of defendant and Steiger as to who was the owner of the van (Steiger's alleged boss or a high school acquaintance named Mark) and how defendant started the van after leaving the White Castle restaurant (with the motor already running or from starting the motor without a key).

In sustaining convictions for possession of a stolen motor vehicle, the court considers all surrounding circumstances and facts. *People v. Wehrwein* (1989), 190 Ill. App. 3d 35, 545 N.E.2d 1005 (the evidence was found to be sufficient where a police officer observed defendant driving a vehicle which had been reported stolen, the defendant abandoned the stolen vehicle on the shoulder of the road when the police began to follow him, and the stolen vehicle was tampered with and had parts missing); *People v. Tucker* (1989), 186 Ill. App. 3d 683, 542 N.E.2d 804 (a passenger was found to be properly convicted where the evidence showed that he acted as a lookout while his companion tampered with the stolen car and the car revealed damage including a peeled steering column and broken locks on the glove compartment and the trunk); *People v. Santana* (1987), 161 Ill. App. 3d 833, 515 N.E.2d 715 (the court found that even though one defendant was not specifically told that the car was stolen, this fact should have been apparent to him where he and another defendant were found with the partially disassembled car in a garage with windows painted black); *People v. Mijoskov* (1986), 140 Ill. App. 3d 473, 488 N.E.2d 1374 (the court concluded that the defendant knew or had reason to know that the car was stolen where the defendant attempted to explain his possession of the stolen car on the basis that he owned and operated an auto repair business but he was unable to produce any invoice or paperwork on the car and he did not have any way of contacting the owner); *People v. Williams* (1976), 44 Ill. App. 3d 143, 147, 358 N.E.2d 58 (the court found that the defendant "cannot ignore the obvious and then assert his ignorance as a defense" where the defendant claimed he did not know that the car from which he was removing parts was stolen).

In contrast, the evidence was held to be insufficient to uphold a conviction for possession of a stolen motor vehicle in *People v. Gordon* (1990), 204 Ill. App. 3d 123, 561 N.E.2d 1164. In *Gordon*, the police discovered the stolen car with the defendant in the driver's seat,

Chris Jackson in the passenger seat, and a third person in the back seat. The owner of the car testified that he was very close to Jackson, had often given Jackson permission to drive his car, and would not have reported the car stolen if he had known it was Jackson who had the car. The evidence also revealed that the defendant had ridden with Jackson in the car at issue on at least one previous occasion.

Defendant seeks to hide behind a facade of benign ignorance. He urges that we exonerate him from culpability because of his reliance on the representations of his companion. While most of the cases cited sustaining convictions for possession of a stolen motor vehicle suggest a more suspicious or sinister circumstance, we believe that this defendant had sufficient facts before him to reasonably conclude that the van was stolen.

It is well established that the trier of fact evaluates the credibility of the witnesses, weighs the evidence, and resolves any inconsistencies. (*People v. Robinson* (1989), 199 Ill. App. 3d 24, 556 N.E.2d 1204.) This principle is founded on the premise that the trier of fact hears the evidence presented and observes the demeanor of the witnesses. (*People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 1024, 486 N.E.2d 1297; *People v. Fleagle* (1984), 129 Ill. App. 3d 298, 302, 472 N.E.2d 155.) In a bench trial, the trial court is entitled to believe or reject a defendant's testimony. *Ferguson*, 204 Ill. App. 3d at 151 (the trier of fact is not required to accept defendant's version of the facts).

A reviewing court has neither the duty nor the privilege to substitute its judgment for that of the trier of fact. (*People v. Novotny* (1968), 41 Ill. 2d 401, 412, 244 N.E.2d 182; *Robinson*, 199 Ill. App. 3d at 30-31.) Thus, a reviewing court will not disturb the findings of the trier of fact unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *Ferguson*, 204 Ill. App. 3d at 151; *Ambrose*, 171 Ill. App. 3d at 91; *Santana*, 161 Ill. App. 3d at 838.

Given the inference of guilty knowledge raised under the possession statute, the evidence considered in its totality, and the standard of review mandated on appeal, we find that defendant knew or had reason to know that the van was stolen. Accordingly, we conclude that the evidence was not so unsatisfactory as to leave a reasonable doubt of defendant's guilt.

Defendant also contends that he was deprived of his right to a fair trial when the court entered judgment without permitting closing argument by defense counsel. (See *People v. Smith* (1990), 205 Ill. App. 3d 153, 562 N.E.2d 553.) The following exchange transpired at the close of defense testimony:

"[PROSECUTION]: Nothing further, Judge.

THE COURT: All right. Redirect.

[DEFENSE]: I have nothing further.

THE COURT: Take him into custody.

Mr. State's Attorney, prepare a criminal information against this man [Steiger] charging him with unlawful possession of stolen motor vehicle.

All right. What else do you have?

[DEFENSE]: Nothing further.

THE COURT: Finding of guilty. Take him into custody, top. Pre-sentence investigation, post trial motions, October 5th. All right. Take him back, Mr. Sheriff."

■ A review of the record does not disclose that the trial court prevented closing argument. Defense counsel indicated that she had "nothing further" at the close of her case. She did not object to the lack of a closing argument or raise that issue in her post-trial motion. Under the circumstances, we believe that defendant's contention is unfounded and waived for purposes of review. *People v. Hickox* (1990), 197 Ill. App. 3d 205, 215, 553 N.E.2d 1166.

Lastly, defendant asserts that the trial court committed reversible error when it admonished his witness that the penalty for perjury or participation in the crime would be arrest. Defendant's contention is based on the following exchange which occurred immediately after Steiger was called as a defense witness.

"THE COURT: Have you warned him?

[DEFENSE COUNSEL]: Yes, Judge. But I'll do it on the record.

THE COURT: If he commits perjury now, I'm going to jam him.

[DEFENSE COUNSEL]: I understand, Judge.

(Brief pause.)

THE COURT: Raise your right hand.

(Witness sworn.)

THE COURT: Sir, has this lady told you if you get on this stand and, under oath, testify to something that is a violation of the law, I'm going to take you into custody?

THE WITNESS: Yes.

THE COURT: She's told you that?

THE WITNESS: Um-hum.

THE COURT: And has she told you that if you get up here and you testify falsely, that I'm going to arrest you and take you into custody? She told you that?

THE WITNESS: Yes.

THE COURT: You wish to have your own lawyer to represent you and tell you when you are in danger of implicating yourself in the commission of a crime?

THE WITNESS: No.

THE COURT: You don't want a lawyer?

THE WITNESS: No.

THE COURT: How old are you?

THE WITNESS: 18.

THE COURT: Sit down.

[DEFENSE COUNSEL]: I didn't hear the age.

THE COURT: He said 18.''

Defendant argues that these remarks by the trial judge intimidated the witness, prejudiced defendant, and thus denied defendant a fair trial. Defendant also submits that the trial court demonstrated prejudice against him because it had Steiger arrested for possession of a stolen motor vehicle after Steiger completed his testimony. We disagree.

A trial court has discretion to examine witnesses provided it does not become an advocate and does not abandon its function as an impartial tribunal. (*People v. Griffin* (1990), 194 Ill. App. 3d 286, 296, 550 N.E.2d 1244.) To constitute reversible error, the defendant must show that the trial judge's remarks were prejudicial and that he was harmed by them. (*People v. Garcia* (1988), 169 Ill. App. 3d 618, 623, 523 N.E.2d 992.) The danger of prejudice due to judicial questioning decreases sharply in cases tried without a jury. (*Griffin*, 194 Ill. App. 3d at 296.) The relevant inquiry in a bench trial is whether the tenor of the trial judge's questioning indicates that the court has prejudged the verdict before hearing all the evidence. *Griffin*, 194 Ill. App. 3d at 296.

A trial judge's warning about perjury to a defense witness was found not prejudicial to the defendant in *People v. Bucciferro* (1976), 37 Ill. App. 3d 211, 345 N.E.2d 738. At the start of the testimony of a defense witness in *Bucciferro*, the trial judge told the witness, "If I find you are lying you are going to jail for perjury. I want the truth." The *Bucciferro* court held that the trial judge's statements did not evidence hostility and did not prevent a fair and impartial trial. *Bucciferro*, 37 Ill. App. 3d at 215.

Similarly, we believe that the comments of the trial judge in the present case do not evidence prejudice against defendant but rather demonstrate the court's concern for the witness' rights. The trial judge's remarks ensured that the witness had been informed and un-

derstood the consequences of perjury, the danger of self-incrimination, and his right to counsel. We find that the judge's statements to the defense witness in this bench trial did not prejudice defendant and did not preclude him from receiving a fair trial.

For the reasons stated, the judgment of the circuit court is affirmed.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.