2019 IL App (1st) 172420-U

No. 1-17-2420

Order filed November 14, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 MC3 001865 |
| | ) | |
| SERGIO ORTIZ VARGAS, | ) | Honorable |
| | ) | Steven Goebel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for criminal damage to property affirmed over his contention that the evidence at trial was insufficient to establish beyond a reasonable doubt that he caused the damage to his apartment.

¶ 2    Following a bench trial, defendant Sergio Ortiz Vargas was found guilty of criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2016)), and sentenced to one year of conditional discharge. On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt because there was "no evidence" that he caused the damage to his apartment,

and, even assuming that he caused the damage, there was no evidence that he caused it knowingly. We affirm.

¶ 3    Matt Orlando testified that he worked in maintenance for the Rand Grove Village apartment complex in Palatine. On June 12, 2017, after being notified of a "disturbance," Orlando went to a building and saw objects, including a closet door and some "plastic parts," coming out of a third-floor window. Defendant was inside the apartment. When defendant came outside, Orlando did not speak to him because the police had already been called. Orlando saw a closet door, pieces of plastic, and a broken television, computer, and lamp on the ground.

¶ 4    During cross-examination, Orlando testified that he did not see defendant damage the apartment, but saw defendant's face at the window as items came out. Orlando did not see a light fixture fall out of the window. When defendant came outside, he began to pick items up and put them in a dumpster. Defendant had previously told Orlando that someone had entered the apartment and damaged his possessions. Orlando did not specify when this conversation took place, but only that it occurred prior to June 12, 2017. When Orlando was escorted inside the apartment by the police, he did not see damage around the door frame. Defense counsel published a photograph of the apartment and Orlando agreed that it depicted damage to the door frame, but stated that he did not notice the damage until defense counsel pointed it out.[1] Orlando did not know how the damage was caused, but thought it looked like the paint was peeled away from the doorjamb.

¶ 5    Susan Nichols, the apartment complex property manager, testified that she received a call about items being thrown from a window, and went to the building with Orlando. There, she saw

---

[1] This photograph, defendant's exhibit No. 1, is not included in the record on appeal.

defendant throwing plastic, wood, and "all kinds of stuff" out of a window. Nichols did not see anything on the ground when she came to work that morning. She told Orlando to call the police and asked defendant what he was doing. Defendant did not answer and continued to throw things out of the window. Defendant then came downstairs and began picking items up and throwing them away. When the police arrived, defendant said that he did not want to talk to them.

¶ 6    Nichols identified photographs of defendant's apartment, including one that showed a closet where the door was "off" and lying against a shelf inside the closet. Other photographs showed plaster pulled off a wall in the dining room, and the ceiling fan and the blinds from the living room windows lying down. She next identified a photograph of "what's left of" the dining room fan, which had been "pulled *** right out," with wires hanging from the ceiling and the blades and light bulbs missing. The photographs were entered into evidence, and copies are included in the record on appeal. Nichols added that only defendant and his dog lived in the apartment, and she never gave defendant permission to damage anything in the apartment.

¶ 7    During cross-examination, Nichols testified that she had "hear[d]" through "police reports and such" that the apartment complex previously had trouble with break-ins. Nichols and Orlando stood "away" from the building so that they would not be hit by anything being thrown out of the window. When defense counsel asked her whether a photograph of the apartment door showed damage, she replied that it looked like paint was peeling and that many apartments in the complex were "like that." Nichols did not know when the peeling occurred, and did not see anyone damage the drywall, fixtures, or closet in the apartment.

¶ 8    During redirect, the State asked Nichols whether there was damage to the apartment before defendant lived there. She answered no, and stated that "[t]hey do not turn units over like

that." The defense objected and the court overruled the objection. Nichols testified she was referring to the property managers and maintenance staff, who put the apartments in "clean condition" by ensuring the carpets were shampooed or replaced, the walls were repaired and painted, and everything was in working order. The defense again objected to the "hypothetical" questions, and the court overruled the objection. Nichols further testified that if a maintenance call was made, routine maintenance was performed. When the State asked Nichols whether the damage to the apartment was present before defendant moved in, she replied that she was not the property manager before defendant moved in and she therefore could not identify who would have examined the apartment and performed the maintenance.

¶ 9 During recross-examination, Nichols acknowledged that she did not personally know the condition of the apartment when it was rented to defendant, and that "offhand," she did not know when maintenance was last called to the apartment. She was aware that in December 2016, the owners walked through every unit and decided what would be renovated.

¶ 10 After the State rested, the defense rested and the court admitted the defense's exhibits over the State's objection.

¶ 11 In finding defendant guilty of criminal damage to property, the trial court found that he was identified by two witnesses as the person throwing items out of a window and that photographs revealed "extensive damage" to the apartment, including "hacked up drywall" with at least five holes and a light fixture "pretty much ripped out from the ceiling." The court further noted that the apartment was relatively bare with little furniture, and there was "no reason this defendant should be throwing [out] items, especially items that are part of the apartment itself," including the ceiling fan, drywall, and the closet door. As there was "no reasonable explanation"

for defendant's actions, the court concluded, based upon the circumstantial evidence, that the State proved beyond a reasonable doubt that defendant was the person who damaged the apartment.

¶ 12    In denying defendant's motion for a new trial, the court further stated that the direct and circumstantial evidence in this case was "overwhelming," and noted that defendant threw "parts of the apartment," including drywall and plastic parts, out of the window and the apartment was "trashed." The court found that it defied logic and common sense that someone would throw things out of a window rather than going to the building's management and reporting that someone damaged the apartment. Following a hearing, defendant was sentenced to one year of conditional discharge.

¶ 13    On appeal, defendant contends that he was not proven guilty beyond a reasonable doubt because no evidence established that he damaged the apartment and there was evidence that someone had broken in. Defendant further argues that even if the State showed that he caused the damage, no evidence proved that he caused the damage knowingly.

¶ 14    When a defendant challenges his conviction based upon the sufficiency of the evidence presented against him, we must ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. All reasonable inferences from the record must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. It is the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from the facts. *Brown*, 2013 IL 114196, ¶ 48. A reviewing court will not substitute its judgment for that of the trier of fact on issues involving

the weight of the evidence or the credibility of the witnesses. *Id*. A defendant's conviction will not be overturned unless the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of his guilt. *Id.*

¶ 15 A person commits criminal damage to property when he "knowingly damages any property of another." 720 ILCS 5/21-1(a)(1) (West 2016). An individual acts knowingly when he is consciously aware that his conduct is practically certain to cause the result. 720 ILCS 5/4-5(b) (West 2016); see also *People v. Hauschild*, 364 Ill. App. 3d 202, 219 (2006), *aff'd in part and rev'd in part*, 226 Ill. 2d 63 (2007) (a person acts with knowledge of the result of his or her conduct, described by the statute defining the offense, when he is consciously aware that a result is practically certain to be caused by his conduct).

¶ 16 Here, defendant does not dispute that damage was done to the apartment; rather, he argues that the State failed to prove that he was the person responsible for the damage. He argues that the facts that no one saw him damage the apartment and that the apartment was broken into were fatal to the State's case.

¶ 17 However, circumstantial evidence is sufficient to sustain a conviction if the evidence satisfies proof beyond a reasonable doubt of the elements of the crime charged. *People v. Hall*, 194 Ill. 2d 305, 330 (2000). The trier of fact does not need to be satisfied beyond a reasonable doubt as to each link in the chain of circumstances, but rather it is sufficient when all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt. *Id.*

¶ 18 The evidence at trial established, through the testimony of Orlando and Nichols, that defendant threw items including a closet door and pieces of plastic out of his apartment window.

Moreover, through Nichols' testimony and certain photographs, the evidence established that a door had been removed from one of the closets, a ceiling fan and window blinds were lying down, the dining room fan had been "pulled *** right out" of the ceiling, and there were holes in the drywall. Although Nichols acknowledged she was not the property manager when defendant moved into the apartment, she testified that generally apartments were not turned over to tenants in that condition. Rather, a unit was in "clean condition" when it was rented, and no evidence suggested that defendant's apartment had not been rented in a clean condition. Taking all the evidence in the light most favorable to the State, as we must, there was sufficient evidence from which a rational trier of fact could have determined that defendant, the only occupant of an apartment, knowingly damaged the apartment's walls and fixtures. *Brown*, 2013 IL 114196, ¶ 48.

¶ 19    Although defendant is correct that no witness testified to seeing him damage his apartment, circumstantial evidence is sufficient to sustain a conviction so long as it satisfies the fact finder beyond a reasonable doubt of the elements of the crime charged. *Hall*, 194 Ill. 2d at 330. Here, defendant was not only present at the scene, but was throwing apartment fixtures out of a third-story window. Defendant is also correct that Orlando testified that some time before June 12, 2017, defendant had stated that someone entered the apartment and damaged his possessions. Notably, Orlando did not testify that defendant claimed that whoever entered the apartment also caused damage to the unit itself, including the closet door, drywall, fan, and blinds. It was for the trier of fact to weigh the evidence presented at trial. *Brown*, 2013 IL 114196, ¶ 48. Here, as evidenced by its guilty finding, the trial court did not afford Orlando's testimony the weight that defendant believes it should have been given. Defendant also argues

that the State failed to establish that the door he was seen picking up from the ground was part of the apartment. However, in weighing evidence, the trier of fact is not required to disregard inferences flowing naturally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 20   In the alternative, defendant contends that even assuming that he caused the damage to the apartment, the State failed to establish that he did so knowingly. In other words, there was no evidence that defendant was "consciously aware" that damage to his apartment was "practically certain to occur." See *Hauschild*, 364 Ill. App. 3d at 219-20 (when the defendant discharged multiple gunshots in a "pitch black" room occupied moments earlier by a dog, the trier of fact could conclude that the defendant knew his act was "practically certain" to injure the animal so as to support conviction for criminal damage to property). Defendant argues that "things break within a home inadvertently or due to negligent behavior." While defendant may be correct that homes suffer routine wear-and-tear, the evidence at trial established that doors were removed from a closet, holes were made in the drywall, parts of a ceiling fan and window blinds were on the ground, and another ceiling fan was "pulled" from the ceiling, leaving wires exposed. A rational trier of fact could infer, based upon the evidence presented at trial, that defendant knowingly caused damage to the apartment.

¶ 21   Ultimately, defendant's arguments on appeal offer an explanation for the damage to the apartment, *i.e.*, that it was broken into and ransacked and that he was merely trying to clean up by throwing the detritus out of the window, which the trial court rejected. We decline defendant's invitation to reweigh the evidence. See *People v. Abdullah*, 220 Ill. App. 3d 687, 693

(1991) ("A reviewing court has neither the duty nor the privilege to substitute its judgment for that of the trier of fact."). A defendant's conviction will be overturned only if the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of his guilt (*Brown*, 2013 IL 114196, ¶ 48); this is not one of those cases. We therefore affirm defendant's conviction.

¶ 22    For the forgoing reasons the judgment of the circuit court of Cook County is affirmed.

¶ 23    Affirmed.