2021 IL App (1st) 191610-U

No. 1-19-1610

Order filed March 12, 2021

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 14557 |
| | ) | |
| TOMMIE HARRIS, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for possession of a stolen motor vehicle over his contention that the evidence was insufficient to prove beyond a reasonable doubt that he acted with the requisite mental state.

¶ 2    Following a jury trial, defendant Tommie Harris was convicted of possession of a stolen

motor vehicle (625 ILCS 5/4-103(a)(1) (West 2018)) and sentenced to six years' imprisonment.

On appeal, he contends that his conviction should be reversed because the State failed to prove

beyond a reasonable doubt that he knowingly possessed a stolen vehicle. For the following reasons, we affirm.

¶ 3    Defendant was indicted upon a single count of possession of a stolen motor vehicle. The indictment alleged that he committed the offense in that "he, not being entitled to the possession of a motor vehicle, to wit: 2004 Chevrolet Venture, property of Angel Rolon, possessed said vehicle knowing it to have been stolen or converted."

¶ 4    At trial, Chicago police officer Marco Escobedo testified that on the afternoon of August 4, 2018 he was on patrol in a squad car driven by his partner, Officer Ivan Villalobos. The squad car was blue and white and fully marked as a Chicago Police Department vehicle. It was equipped with a device that could read the license plates of nearby vehicles and alert police if it detected a plate for a vehicle reported stolen. While the officers were on Cottage Grove Avenue, Escobedo received an alert regarding a 2004 Chevy minivan in front of the squad car. Upon receiving the alert, Escobedo entered the minivan's information into the "Leads" (Law Enforcement Agencies Data System) system, which confirmed the vehicle was reported stolen. Escobedo then radioed dispatch in order to obtain additional "confirmation that it was in fact stolen."

¶ 5    Escobedo testified that he attempted to get the minivan to stop by turning on the squad car's lights. He identified defendant as the minivan's driver. Defendant "picked up speed" and disobeyed a stop sign shortly before hitting a curb and coming to a stop in the 5100 block of South Ingleside Avenue. After the vehicle stopped, defendant "bailed out" from the right passenger side and fled on foot. Escobedo and Villalobos pursued defendant on foot through a gangway and into an alley, where defendant "gave up" and was placed into custody. Escobedo testified that he was wearing a body camera during his pursuit of defendant. He identified body camera footage of the incident (People's Exhibit 1) which was published to the jury.

¶ 6 Escobedo testified that defendant left the keys to the minivan inside the vehicle, where Villalobos found them. After defendant was in custody, Escobedo learned that the registered owner of the vehicle was Angel Rolon. Escobedo contacted Rolon and later returned the vehicle to him at a police station.

¶ 7 On cross-examination, Escobedo acknowledged that the vehicle was reported stolen on July 31, 2018. He did not know who had driven the vehicle in the three days prior to defendant's arrest on August 4, 2018. He did not recall any damage to the vehicle.

¶ 8 The State introduced a stipulation that, if called, Angel Rolon would testify that he owned a 2004 Chevy Venture minivan with license plate number Z713285. On July 31, 2018, he drove the vehicle to a building in the 1300 block of West 52nd Street in Chicago. He left the keys to the vehicle on the first floor while he worked on the third floor. At approximately 5 p.m., he noticed the vehicle and keys were missing and contacted police to report the vehicle as stolen. Rolon was contacted by police on August 4, 2018 and the vehicle was returned to him.

¶ 9 Defendant testified that he was 62 years old and was addicted to heroin at the time of his arrest on August 4, 2018. On that date, he was in the south side of Chicago trying to find someone to take him to get heroin. Defendant did not have a car or a driver's license. Defendant spoke to someone he knew as "Lil Joe," who agreed to drive him in a van for $30. Lil Joe began to drive defendant in the van, until Lil Joe received a call and then told defendant that he could no longer drive him. At that point, defendant and Lil Joe agreed that defendant would pay Lil Joe up front, defendant would drive himself to buy heroin, and would then call Lil Joe to return the vehicle. Defendant was driving the van to purchase heroin when he was pulled over by police.

¶ 10 Defendant acknowledged that he initially ran from police. He testified that he did so because he did not have a driver's license, and because he knew from past experience that it was

unpleasant to be in jail while "going through withdrawals." He denied knowing that the van was stolen.

¶ 11    On cross-examination, defendant testified that Lil Joe had previously taken him to "make runs" for heroin. Defendant testified that he knew it was illegal for him to drive, but he was going through withdrawal and focused on getting heroin. After police apprehended him, police told him that the vehicle was stolen. He told police that he needed an ambulance, and he was taken to a hospital, where he stayed while he went through heroin withdrawal.

¶ 12    In rebuttal, the State, for purposes of impeachment, introduced certified copies of defendant's conviction for possession of a controlled substance in case 10 CR 3632 and his conviction for burglary in case 13 CR 5917. The trial court instructed the jury that the prior convictions were being introduced solely "as it may impact how you judge the credibility of the defendant."

¶ 13    During deliberations, the jury submitted the following question to the court:

> "It says knowledge definition, A, actual knowledge, B, should have known; C. should have known with reasonable inquiry. Which are we looking for in the statute?"

With the agreement of the parties, the court responded to the question by additionally instructing the jury:

> "A person knows the nature or attendant circumstances of his conduct when he is consciously aware that his conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists."

¶ 14    The jury subsequently found defendant guilty of possession of a stolen motor vehicle.

¶ 15    Defendant's posttrial motion was denied, and the court conducted a sentencing hearing. Following that hearing, the court noted that, due to defendant's criminal history, the offense was a Class X felony subject to a minimum of six years' imprisonment. The court sentenced defendant to six years' imprisonment.

¶ 16    On appeal, defendant contends that the State failed to prove the requisite mental state for the offense, *i.e.* that the State failed to prove that he knew the vehicle was stolen. On that basis, he asserts that his conviction should be reversed.

¶ 17    "When reviewing a challenge to the sufficiency of the evidence, this court considers whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original; internal quotation marks omitted.) *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007).  The reviewing court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). The trier of fact "is not required to disregard inferences that flow from the evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." (Internal quotation marks omitted.) *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 63.

¶ 18    "The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on questions involving the weight of the evidence, conflicts in the testimony, or the credibility of witnesses. [Citation.]" *People v. Corral*, 2019 IL App (1st) 171501, ¶ 71. "Only where the evidence is so improbable or unsatisfactory as to create reasonable doubt of the defendant's guilt will a conviction be set aside. [Citation.]" *Id.* ¶ 72.

¶ 19    In this case, defendant was convicted under the portion of section 4-103 of the Illinois Vehicle Code (Vehicle Code) making it unlawful for a person not entitled to the possession of a

vehicle to receive or possess it "knowing it to have been stolen or converted." 625 ILCS 5/4-103(a)(1) (West 2018). In order to sustain defendant's conviction for this offense, the State was required to prove beyond a reasonable doubt that defendant "possessed a stolen vehicle with knowledge that it had been stolen. [Citation.]" *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 52. The version of section 4-103(a)(1) of the Vehicle Code in effect at time of defendant's August 4, 2018 arrest permits knowledge to be inferred from exclusive, unexplained possession of a stolen vehicle:

> "[T]he General Assembly finds that the acquisition and disposition of vehicles and their essential parts are strictly controlled by law and that such acquisitions and dispositions are reflected by documents of title, unform invoices, rental contracts, leasing agreements and bills of sale. It may be inferred * * * that a person exercising exclusive unexplained possession over a stolen or converted vehicle or an essential part * * * has knowledge that such vehicle or essential part is stolen or converted, regardless of whether the date on which such vehicle or essential part was stolen is recent or remote." 625 ILCS 5/4-103(a)(1) (West 2018).[1]

¶ 20    For purposes of the statute, "[k]nowledge is a question of fact for the jury. [Citation.] Direct proof of knowledge is not necessary; it may be proven by 'circumstances that would induce a belief in a reasonable mind that the property was stolen.' " *Jacobs*, 2016 IL App (1st) 133881, ¶ 53

---

[1] Effective August 10, 2018, the statutory language regarding the inference was revised to provide: "Knowledge that a vehicle or essential part is stolen or converted may be inferred: (A) from the surrounding facts and circumstances, which would lead a reasonable person to believe that the vehicle or essential part is stolen or converted, or (B) if the person exercises exclusive unexplained possession over the stolen or converted vehicle or essential part, regardless of whether the date on which the vehicle or essential part was stolen is recent or remote."

(quoting *People v. Abdullah*, 220 Ill. App. 3d 687, 690 (1991)). Regarding application of the statutory inference, our court has explained:

> "The defendant 'may attempt to rebut the inference of guilty knowledge which arises from the possession of a stolen vehicle, but the defendant must offer a reasonable story or be judged by its improbabilities.' *Abdullah*, 220 Ill App. 3d at 691. Nor is the trier of fact required to accept the defendant's version of the facts. *Id.*" *Jacobs*, 2016 IL App (1st) 133881, ¶ 53.

¶ 21    Defendant does not dispute that the minivan he was driving on the date of his arrest was, in fact, stolen, supporting the statutory inference. *Jacobs,* 2016 IL App (1st) 133881, ¶ 54 (where it was undisputed that defendant was driving a stolen car, "the jury could permissibly draw an inference that defendant knew the car was stolen."). Rather, he argues that he overcame that inference by providing a "reasonable and uncontradicted" explanation for his possession of the vehicle. He contends that the State did not meet its burden of proof because it "did not rebut his testimony that he fled, not because the minivan was stolen, but because he was driving without a license" and did not want to go through heroin withdrawal in jail. He argues that the State "did not present any evidence that [defendant] had reason to know the vehicle was stolen" in light of his testimony and the lack of evidence that the vehicle was damaged. He maintains that, given his explanation for his possession of the vehicle, the State "cannot rely on the statutory inference alone" to prove the requisite knowledge to support the offense.

¶ 22    After reviewing the trial evidence (and the permissible inferences therefrom) in the light most favorable to the State, we find that a rational trier of fact could have found that defendant knowingly possessed a stolen vehicle. Although defendant offered testimony to explain his possession of the stolen vehicle, the jury was not obligated to find that he offered a "reasonable

story" or to "accept defendant's version of the facts." *Abdullah*, 220 Ill. App. 3d at 691. Indeed, the jury was not required to credit any portion of his testimony. See *People v. Tabb*, 374 Ill. App. 3d 680, 692 (2007) ("the jury may believe as much, or as little, of any witness' testimony as it sees fit."); *People v. Zolidis*, 115 Ill. App. 3d 669, 674 (1983) ("the trier of fact is not required to believe an accused's exculpatory testimony [citation]; rather it must consider the probability or improbability of that testimony, the circumstances surrounding the incident, and the testimony of other witnesses"). In other words, although defendant offered testimony to rebut the inference that arose from his possession of a stolen vehicle, the jury was free to reject his testimony and find the inference unrebutted.

¶ 23    We agree with the State that our decision in *Jacobs*, 2016 IL App (1st) 133881 is instructive. There, the defendant similarly argued that the State failed to prove that he knew the vehicle was stolen. Although it was undisputed that defendant was arrested while driving a stolen car, "defendant testified that he had rented the car for $40 from an acquaintance for a one-day, round-trip drive" between Peoria and Chicago. *Id.* ¶ 55. In rejecting defendant's challenge to the sufficiency of the evidence, our court recognized that "the jury was not required to accept his explanation of the stolen car." *Id.*  After noting that a police officer testified that "defendant gave him different explanations for his possession of the car," we found there was "sufficient evidence on which the jury could rely to reject defendant's explanation for his possession of the stolen car." *Id.* at ¶¶ 55-56. We explained: "It was the jury's prerogative to assess the credibility of defendant's story, and, in light of the evidence supporting the jury's rejection of his testimony, we will not second-guess its assessment." *Id*. ¶ 56.

¶ 24    We find *Jacobs* analogous. *Jacobs* illustrates that a defendant's testimony offering an innocent explanation will not necessarily rebut the statutory inference that defendant knowingly

possessed a stolen vehicle, as it remains the jury's function to assess the credibility of the defendant's account. Just as the jury in *Jacobs* was free to disbelieve the defendant's story that he rented the car on the day of his arrest, the jury in the instant matter was not obligated to believe defendant's testimony that he obtained the minivan from Lil Joe in order to buy heroin.

¶ 25    Defendant nevertheless asserts that this case is similar to the situation in *People v. Gordon*, 204 Ill. App. 3d 123 (1990), in which we reversed the defendant's conviction for possession of a stolen motor vehicle. Notably, our 2016 decision in *Jacobs* also discussed *Gordon* and found it distinguishable. *Jacobs*, 2016 IL App (1st) 133881, ¶¶ 57-58. As discussed below, we also find that *Gordon* is inapposite.

¶ 26    In *Gordon*, the owner of the vehicle at issue testified that he often loaned the vehicle to codefendant Chris Jackson, although the owner had not loaned the car to Jackson on the date in question. 204 Ill. App. 3d at 124. The owner stated that, had he known Jackson had taken the car, he would not have reported it stolen. *Id*. A police officer found the car in a parking lot, with defendant in the driver's seat and Jackson in the front passenger seat. *Id*. at 125. Defendant told the officer he was hired to install a radio in the car and was driving the car to test the radio, but did not know who the owner was. *Id*.

¶ 27    In Gordon's case-in-chief, two witnesses testified that they had previously seen Jackson drive the vehicle, and a third witness testified that Gordon had worked on her car. *Id*. at 125. Gordon testified that he had previously ridden in the same vehicle with Jackson, and that Jackson asked him to fix the radio. *Id*. Gordon admitted that he was driving the car, but did not know that it was reported stolen. *Id*.

¶ 28    On appeal from his conviction, the *Gordon* defendant argued that the evidence failed to prove he knew the car was stolen. This court agreed that the evidence was insufficient and "so

improbable as to raise a reasonable doubt of guilt." *Id*. at 126. In reaching this conclusion, this court recognized that section 4-103(a)(1) of the Vehicle Code permitted an inference that a person exercising exclusive unexplained possession over a stolen vehicle had knowledge that such vehicle is stolen. *Id.* at 127 (quoting Ill. Rev. Stat. (1985), ch. 95 ½, par. 4-103(a)(1)). Nevertheless, in finding the evidence insufficient to show Gordon's knowledge, we explained:

> "In the case at bar, the State failed to prove that Gordon committed a theft. The testimony established that Jackson gave Gordon permission to drive the car, in broad daylight, in a public area where the car was known and the keys were in the ignition. Moreover, the evidence revealed that Jackson asked Gordon to repair the radio and when the police approached the individuals in the car they made no attempt to flee. The evidence established that Nickerson * * * often gave Jackson permission to drive the vehicle * * *. The evidence also revealed that Gordon worked on cars and had ridden in Nickerson's car with Jackson on at least one previous occasion. There were no signs of unauthorized entry into the vehicle." *Id*. at 127-28.

We concluded that "the evidence was so unsatisfactory as to leave a reasonable doubt whether Gordon was in possession of the car *knowing* it to be stolen." (Emphasis in original.) *Id.* at 128.

¶ 29    Defendant suggests that we should reach the same result in this case because, like the defendant in *Gordon*, he "was given permission to use the [stolen] vehicle in a public place in broad daylight, from someone he knew," *i.e.*, Lil Joe. We disagree and find that this case is distinguishable from *Gordon.* Rather, this case is much more similar to *Jacobs,* where we found that the jury was free to reject the defendant's uncorroborated story that he had rented the vehicle without knowing it was stolen. Significantly, the *Jacobs* defendant similarly sought to rely on

*Gordon* to argue insufficient proof that he knew the vehicle in question was stolen, but we rejected that reliance:

> "We do not agree that *Gordon* compels us to reverse defendant's conviction in this case. Unlike *Gordon*, where there was evidence that the car's owner had previously loaned the car to one of the individuals found in it, there was no evidence in this case [that the owner] had ever given the car to Brian or defendant before. And there was evidence in *Gordon* corroborating the defendant's explanation that he had been hired to fix the car's radio: other witnesses testified that they had previously hired the defendant to do such work. Here, there was no evidence to corroborate the notion that Brian had rented his car out to defendant or anyone else before." *Jacobs*, 2016 IL App (1st) 133881, ¶ 58.

¶ 30    *Gordon* is also distinguishable by the fact that the defendant in that case made no attempt to flee when confronted by police. *Gordon*, 204 Ill. App 3d at 128. In contrast, defendant's flight from police in this case could be considered as circumstantial evidence of knowledge that the vehicle was stolen. *People v. Smith*, 226 Ill. App. 3d 433, 436-37 (1992) ("flight from the stolen motor vehicle is evidence tending to show that defendant knew the vehicle was stolen [Citations.]"); see also *People v. Lewis*, 165 Ill. 2d 305, 349-50 (1995) ("The fact of flight, when considered in connection with all other evidence in a case, is a circumstance which may be considered by the jury as tending to prove guilt. [Citation.] The inference of guilt which may be drawn from flight depends upon the knowledge of the suspect that the offense has been committed and that he is or may be suspected. [Citation.]").

¶ 31    We acknowledge that there was no evidence that the vehicle in this case showed signs of damage, which might otherwise be construed as further evidence of his knowledge that it was

stolen. See *Abdullah*, 220 Ill. App. 3d at 691 (recognizing that the "condition of the vehicle is one of the most significant factors which courts consider in determining whether or not the defendant had knowledge of the vehicle's theft."). However, despite the lack of damage, the jury could nevertheless find that he had the requisite knowledge. *Jacobs*, 2016 IL App (1st) 133881, ¶¶ 59-60 (explaining that, although the "pristine condition of the vehicle" was an "evidentiary point in defendant's favor," the State's evidence of defendant's knowledge was sufficient where "[h]is unexplained possession of the car gave rise to an inference that he knew it was stolen, and his explanation for his possession conflicted with other evidence such that the jury could reasonably reject his explanation.").

¶ 32    We reiterate that, "on review, all reasonable inferences from the evidence are drawn in favor of the State." *Corral*, 2019 IL App (1st) 171501, ¶ 71. The jury could infer defendant's knowledge from his undisputed possession of a stolen vehicle. 625 ILCS 5/4-103(a)(1) (West 2018). The only evidence offered to rebut that inference was defendant's testimony that he obtained the vehicle from Lil Joe on the day of his arrest. Defendant suggests that, because no other witness directly contradicted his explanation for driving the stolen car, the jury was required to believe him. However, it remained the jury's role to decide whether his explanation was reasonable or incredible. See *Abdullah*, 220 Ill. App 3d at 691 (a defendant may attempt to rebut the inference arising from possession of a stolen vehicle by "offer[ing] a reasonable story or be judged by its improbabilities" but "the trier of fact is not required to accept defendant's version of the facts. [Citations.]"); *Jacobs*, 2016 IL App (1st) 133881, ¶ 56 ("It was the jury's prerogative to assess the credibility of defendant's story" explaining his possession of the stolen vehicle). Given the verdict, the jury apparently found that defendant's testimony lacked credibility.

¶ 33 Under the circumstances, the jury was entitled to reject defendant's testimony and to find that he knew the vehicle was stolen. We recognize that "a jury cannot arbitrarily or capriciously reject the testimony of an unimpeached witness." *People ex rel. Brown v. Baker*, 88 Ill. 2d 81, 85 (1981). That is, "[w]here the testimony of a witness is neither contradicted, either by positive testimony *or by circumstances*, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded even by a jury. [Citations.]" (Emphasis added.) *Id*. Notwithstanding that principle, the jury was not required to accept defendant's testimony in this case. Although defendant's explanation was not directly contradicted by other witness testimony, it was at odds with the undisputed circumstantial evidence, *i.e.* that he was driving a stolen vehicle, and that he initially fled police. Moreover, defendant's credibility was impeached with two prior convictions.

¶ 34 In sum, viewing the evidence in the light most favorable to the State, the jury could (and apparently did) draw the statutorily-permitted inference that defendant knowingly possessed a stolen vehicle, while rejecting defendant's testimony as incredible. We will not second-guess the jury's determination. See *Corral*, 2019 IL App (1st) 171501, ¶ 71 ("The reviewing court will not retry the defendant or substitute its judgment for that of the trier of fact on questions involving the weight of the evidence * * * or the credibility of witnesses."). Accordingly, we reject defendant's challenge to the sufficiency of the evidence.

¶ 35 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36 Affirmed.